CULPEPER LEAGUE FOR ENVIRON-
MENTAL PROTECTION, Petitioner,

v.

UNITED STATES NUCLEAR REGULA-
TORY COMMISSION and United
States of America, Respondents,

Virginia Electric and Power
Company, Intervenor.

FAUQUIER LEAGUE FOR ENVIRON-
MENTAL PROTECTION, Petitioner,

v.

NUCLEAR REGULATORY COMMIS-
SION and the United States of
America, Respondents,

Virginia Electric and Power
Company, Intervenor.

Nos. 76–1484 and 76–1532.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 25, 1977.

Decided March 16, 1978.

Rehearing Denied April 11, 1978.

Clarence T. Kipps, Jr., Washington, D. C., for petitioner in No. 76–1484.

Collister Johnson, Jr., Washington, D.C., of the bar of the Supreme Court of Virginia Pro Hac Vice by special leave of court for petitioner in No. 76–1532. John T. Schell, Arlington, Va., was on the brief for petitioner in No. 76–1532.

Steven C. Goldberg, Atty., U. S. Nuclear Regulatory Commission, Washington, D. C., with whom Peter R. Taft, Asst. Atty. Gen., Peter L. Strauss, Gen. Counsel, Stephen F. Eilperin, Asst. Gen. Counsel, U. S. Nuclear Regulatory Commission and Edmund B. Clark, Atty., Dept. of Justice, Washington, D. C., were on the brief for respondents.

Michael W. Maupin, Richmond, Va., with whom James N. Christman, Richmond, Va., was on the brief for intervenor.

Before: MacKINNON, ROBB and WIL-KEY, Circuit Judges.

PER CURIAM:

The Culpeper League for Environmental Protection (Culpeper) and the Fauquier League for Environmental Protection (Fauquier) petition for review of an order of the Atomic Safety and Licensing Board of the Nuclear Regulatory Commission, Virginia Electric & Power Co. (North Anna Nuclear Power Station, Units 1 & 2) Docket Nos. 50–338 & 50–339 (Dec. 8, 1975), at J.A. II–161–189. In its order the Board approved a routing proposal by Virginia Electric & Power Company (VEPCO) for an electric power transmission line between its North Anna nuclear power station and its Morrisville substation, 32.6 miles north.[1] Petitioners have contested VEPCO's proposed route both here and before the Board, contending that alternate, less environmentally harmful routes are available. Petitioners maintain that the Board in approving VEPCO's proposed route disregarded

---

1. All the locations referred to in this opinion are in Virginia.

the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321 *et seq.*, by failing "to give adequate consideration to these alternate routes. We think however that the Board complied with NEPA and accordingly we dismiss the petition for review.

The main point of petitioners' attack is that the Board's action contravenes our holding in *Aeschliman v. Nuclear Regulatory Commission,* 178 U.S.App.D.C. 325, 547 F.2d 622 (1976), *cert. granted sub nom. Consumers Power Co. v. Aeschliman,* 429 U.S. 1090, 97 S.Ct. 1098, 51 L.Ed.2d 535 (1977). We think however that petitioners' reliance on the *Aeschliman* decision is misplaced. In the *Aeschliman* case we reversed the Nuclear Regulatory Commission's refusal to give any consideration to energy conservation measures once they had been advanced as a "colorable" alternative. 178 U.S.App.D.C. at 331, 547 F.2d at 628. We noted further that the Commission must explain why further consideration of an alternative was unwarranted, and with sufficient explication to facilitate judicial review. *Id.* In the present case the Board has adhered to our decision in *Aeschliman.* The Board's order shows that it has fully considered each of the three alternatives advanced by the petitioners. *See* J.A. at II–163, II–165, II–173–76, II–178–84. Not only did the Board in its order analyze each of these alternatives and describe their environmental consequences, but the Board explained why it selected the route proposed by VEPCO instead of an alternate one. *See id.* The order manifests, moreover, that the Board has taken a "hard look" at the environmental consequences of each proposal, *see Kleppe v. Sierra Club,* 427 U.S. 390, 410, 96 S.Ct. 2718, 49 L.Ed.2d 576 n. 21, *citing Natural Resources Defense Council v. Morton,* 148 U.S.App.D.C. 5, 16, 458 F.2d 827, 838 (1972). In such a case, the Supreme Court has cautioned, a court may not " 'interject itself within the area of discretion of the executive as to the choice of the action to be taken.' " *Id.*

Petitioners also argue that the Board's judgment in weighing and balancing the costs of the alternatives is flawed in two respects. First, petitioners assert that the Board acted unreasonably by placing excessive weight on the present intended use of the Rappahannock Wildlife Management Area (RWMA), a 3800-acre forested area with some 5½ miles of river front. The route proposed by VEPCO would traverse this area while those suggested by petitioners would not. The Board concluded that the environmental consequences of running the transmission line through the RWMA would be slight because the foreseeable uses of the area—hunting and fishing and development of a day-use facility comprised of a river access and small picnic area—were compatible with such a line. Petitioners contend, however, that the environmental costs of crossing the RWMA are substantial because the land is well suited for development as a park for general recreational purposes. We think the Board's decision to place "little weight" on the possibility that the RWMA would be developed into a major park is reasonable. The Virginia Commission of Game and Inland Fisheries acquired the RWMA to provide hunting and fishing for Virginia citizens, and the land was purchased with sportsmen's funds derived from the sales of licenses and from excise taxes on hunting and fishing equipment. J.A. at II–170. In fact, the Game Commission was aware of VEPCO's plans before it acquired the property and the land was purchased subject to easements for the transmission line right-of-way. *Id.* Moreover, as the Board noted, the Virginia Commission of Outdoor Recreation plans to develop a large park less than 10 miles from the RWMA. *Id.* at 173. On the evidence therefore we cannot fault the Board's conclusion that it is unlikely that the RWMA will be developed into a major park. Nor was it improper for the Board to consider the views of other agencies on the probable uses of the RWMA; for the Board's reasoning in its order does not suggest that it abandoned its obligation to make an independent judgment regarding the environmental impact on the RWMA from VEPCO's proposal.

Fauquier contends further that in calculating the cost to build the transmission line, the Board erroneously excluded the costs for building a transmission line north from Morrisville to Bristers. This segment is necessary if power is to flow to Northern Virginia from the North Anna plant over the line proposed by VEPCO; this spur would be unnecessary for such power transmission if either of two routes suggested by Fauquier were used. The Board declined to include the costs of this construction in its calculation because this segment was to be built regardless of the route approved by the Board. Thus the record shows that although the Morrisville-Bristers line could transmit power from the North Anna plant to Northern Virginia, the line was also intended to dispatch power to towns west of Morrisville as well as to transmit power from a coal-fired generating plant in West Virginia. J.A. at I–7–8, I–133–34, I–188–89, II–182. Consequently, the Board's conclusion that the segment was to be built in any event was reasonable, and its exclusion of the cost of the segment was not arbitrary.

Finally, Culpeper urges that the Board improperly failed to require VEPCO to use natural topography to mask its towers and power line. The Board's rationale for rejecting such a routing technique, we believe, is reasonable:

> . . . The topographical relief is relatively small and only in a few places do the maximum and minimum elevations differ by as much as 100 feet within a distance of a mile. Thus, there are no routes where a line such as this, with towers about 100 feet high, could, in the absence of vegetation, be significantly hidden by features of the terrain. The nature of the vegetation is such, however, that at most places an observer on the ground is shielded from the line (rather than the transmission line being shielded). Consequently, a line, along any of the routes, would be visible only from points almost directly under it and from some cleared areas. It appeared to the Board, from its inspections of the area and study of the topographic maps among the exhibits and from the testimony in the record, that, in general there is little, if any, choice among the various routes with respect to overall visibility of the line and that significant changes in degree of visibility could not be achieved by making minor adjustments in the routes such as placing the line higher or lower on the slopes or behind a row of hills.

J.A. at II–164–65.

## CONCLUSION

The Board's order demonstrates that it has adequately considered each alternative advanced by the petitioners. Nor can we find fault with the Board's calculation of the costs associated with each proposal. Accordingly we dismiss the petition for review.

*So ordered.*